DETROIT, G. H. & M. RY. CO. v. FULLER, Auditor General, et al.

GRAND TRUNK RY. CO. OF CANADA v. SAME.

(District Court, E. D. Michigan, S. D. February 22, 1913.)

1. TAXATION (§ 608*)—RESTRAINING COLLECTION—ADEQUATE REMEDY AT LAW.
    Pub. Acts Mich. 1911, No. 95, imposes a tax on holders of stock, bonds and other evidences of indebtedness of specially chartered railroads, and makes it the duty of the persons or corporations against whom the taxes are assessed to pay the same into the state treasury, and, if they claim that the taxes are illegal for any reason, authorizes them to bring suit to recover the taxes paid. *Held*, that a specially chartered railroad. claiming the act unconstitutional and representing unknown bondhold ers, could not safely pay the tax and then seek to recover the same. but had no adequate remedy at law, and therefore was entitled to sue in equity to restrain its collection.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1230–1241 ; Dec. Dig. § 608.*]

2. TAXATION (§ 608*)—RESTRAINING COLLECTION—CLOUD ON TITLE.
    Taxes levied on the holders of stock, bonds, and other evidences of indebtedness of a specially chartered railroad, imposed by Pub. Acts Mich. 1911, No. 95, constituted a cloud on the title to the real estate of such a railroad, and equity therefore had jurisdiction to remove the cloud by a bill to enjoin the tax on the ground that the statute was un constitutional.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1230–1241 ; Dec. Dig. § 608.*]

3. TAXATION (§ 608*)—EQUITABLE RELIEF—IRREPARABLE INJURY—ILLEGAL TAXES.
    Where taxes were levied on the stock, bonds, and other evidences of indebtedness of a specially chartered railroad as provided by Pub. Acts Mich. 1911, No. 95, a holder of bonds so taxed being unable, in an ac tion to recover the taxes paid for alleged illegality as authorized by the act, to recover the necessary expenses to which it would inevitably be put by such action, it would thereby suffer irreparable injury if com pelled to pay the tax, and was therefore entitled to sue to restrain the same.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1230–1241 ; Dec. Dig. § 608.*]

4. CONSTITUTIONAL LAW (§ 229*)—TAXATION (§ 37*)—RAILROADS—EVIDENCES OF INDEBTEDNESS—CLASS LEGISLATION.
    The Detroit, Grand Haven & Milwaukee Railway Company being the only specially chartered railroad in Michigan, Pub. Acts 1911, Mich. No. 95, imposing a tax on the stock, bonds, and other evidences of indebted-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ness of specially chartered railroad companies, was invalid as class legislation in violation of Const. U. S. Amend. 14.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 591–624; Dec. Dig. § 229;* Taxation, Cent. Dig. §§ 681, 682; Dec. Dig. § 37.*]

5. CONSTITUTIONAL LAW (§ 137*)—TAXATION—OBLIGATION OF CONTRACTS—RAILROAD INDEBTEDNESS.

Pub. Acts Mich. 1911, No. 95, imposing a tax on the owners of stock, bonds, and other evidences of indebtedness of specially chartered railroads, did not impair the obligation of the charter contract of a railroad company (Sess. Laws Mich. 1855, Act 140, § 9), providing for the imposition of taxes on such railroad company as distinguished from the holders of its securities.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 354; Dec. Dig. § 137.*]

6. TAXATION (§ 253*) — INDEBTEDNESS — SITUS — RAILROAD BONDS OWNED WITHOUT THE STATE.

Pub. Acts Mich. 1911, No. 95, imposing a tax on the owners of stock, bonds, and other evidences of indebtedness of specially chartered railroads, was invalid in so far as it provided for the imposition of a tax on the securities of a specially chartered railroad held without the state, under the rule that a state has no authority to tax securities owned and held beyond its territorial jurisdiction.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 417; Dec. Dig. § 253.*]

7. CONSTITUTIONAL LAW (§ 154*)—TAXATION (§ 37*)—OBLIGATION OF CONTRACTS—IMPAIRMENT—RAILROAD BONDS.

Pub. Acts Mich. 1911, No. 95, imposing a tax on the owners of stock, bonds, and other evidences of indebtedness of specially chartered railroads and requiring the railroad to pay the tax and deduct same from interest, was unconstitutional as impairing the contract liability between a railroad company and the holders of its securities, and was therefore void.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 426–428, 442–444, 447–455, 458, 459, 461–473; Dec. Dig. § 154;* Taxation, Cent. Dig. §§ 64–66, 133; Dec. Dig. § 37.*]

In Equity. Suits by the Detroit, Grand Haven & Milwaukee Railway Company and by the Grand Trunk Railway Company of Canada against Oramel B. Fuller, Auditor General, and Franz C. Kuhn, Attorney General, to restrain the enforcement of Pub. Acts Mich. 1911, No. 95, imposing a tax on the stock, bonds, and other evidences of indebtedness of specially chartered railway companies. Demurrers to the bills overruled, and defendants allowed time to answer.

H. Geer and L. C. Stanley, both of Detroit, Mich., for complainants.

Franz C. Kuhn, Atty. Gen., and Oscar Edward Waer, of Grand Rapids, Mich., for defendants.

TUTTLE, District Judge. These suits involve the constitutionality of Act No. 95, Public Acts of Michigan for the year 1911, under which certain taxes have been assessed against the owners or holders of the stock, bonds, and other evidences of indebtedness of the Detroit, Grand Haven & Milwaukee Railway Company, and also

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

involve the validity of such taxes on other grounds than the constitutionality of that act as against such owners or holders. The Detroit, Grand Haven & Milwaukee Railway Company is what is known as a specially chartered railway company, being organized and existing under an act of the territorial Legislature of Michigan of March 7, 1834 (Laws 1834, p. 40). Act No. 95, which is in question, seeks to impose on the stock, bonds, and other indebtedness of specially chartered railway companies doing business in Michigan certain specific taxes. These bills are filed by the Grand Trunk Railway Company of Canada as the owner and holder of certain of the outstanding bonds and· other evidences of indebtedness of the Detroit, Grand Haven & Milwaukee Railway Company, and by the latter company as the representative of certain of its unknown bondholders, the act making it the duty of that company to pay the taxes assessed against bondholders whose names and addresses are unknown, to enjoin the state officials charged with the duty of collecting the taxes assessed from enforcing collection. The taxes assessed against the stockholders are not involved in these suits, and the court does not intend to be understood as passing upon their validity. The defendants have demurred to the bills.

. [1] The first question raised by the demurrers is whether the complainants have an adequate remedy at law. The court is of the opinion that no adequate remedy at law exists. The act provides that it shall be the duty of the persons or corporations against whom the taxes are assessed to pay them into the state treasury, and then, if they claim that the taxes are illegal for any reason, that they may bring suits against the State Treasurer to recover the taxes thus paid. If the Detroit, Grand Haven & Milwaukee Railway Company should comply with this provision as to the unknown bondholders represented by it, and should pay the taxes assessed against such bondholders into the state treasury, deducting the amount thereof from the interest payable to the bondholders, then it is obvious that that company would subject itself to liability to suit at the hands of such bondholders, and could only justify such payments by showing the validity of· Act No. 95. This would clearly result in a multiplicity of suits because each bondholder affected could bring such a suit to recover the amount of the taxes thus withheld by the Railway Company.

[2] The court is also of the opinion that the taxes assessed under this act constitute a cloud upon the real estate of the Detroit, Grand Haven & Milwaukee Railway Company, and that equity has jurisdiction to remove such a cloud.

[3] As to the bill of the Grand Trunk Railway Company of Canada, the court is of the opinion that it makes a case for equitable relief on the ground of irreparable injury. If that company should pay the taxes assessed against it, and then bring suit against the State Treasurer to recover them and should finally recover, it would have been subjected to a long and useless litigation and could not recover the necessary expenses to which it would inevitably be put. As said in Railway Company v. Sullivan, 173 Fed. 456, 97 C. C. A. 1: ·

"An injunction in this suit will enable it (the company against which the tax was illegally assessed) to retain it (the tax), and will end this controversy here. * * * This proposed remedy (at law) is neither as prompt nor as certain nor as complete as the relief which may be granted through this suit in equity."

See, also, Raymond v. Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Michigan Telephone Tax Cases (C. C.) 185 Fed. 634.

The court does not find it necessary to decide whether the lien given by the act upon the bonds and other evidences of indebtedness upon which the tax is assessed constitutes a cloud upon the title which will give jurisdiction to a court of equity. For the reasons above stated the court is of the opinion that no adequate remedy at law exists, and therefore that this court should take jurisdiction in these cases.

[4] The first ground upon which Act No. 95 is attacked by the complainants is that it constitutes class legislation, so called, in contravention of the fourteenth amendment to the federal Constitution. The bills show that there are in Michigan a large number of other railroad companies organized and doing business under the general railroad laws of this state, and paying taxes under the Ad Valorem Tax Law of this state. The Detroit, Grand Haven & Milwaukee Railway Company is the only specially chartered railway company in Michigan, and no more companies of that kind can be organized under the present Constitution adopted in 1908. It pays taxes under a special contract with the state, consisting of section 9, Act 140, Session Laws of 1855, which has been held to be a valid and binding contract between that company and the state of Michigan in the cases of Powers v. Railway Co., 201 U. S. 543, 26 Sup. Ct. 556, 50 L. Ed. 860, and Attorney General v. Railway Co., 157 Mich. 144, 121 N. W. 814. Act No. 95, in seeking to impose a tax only upon the stock, bonds, and other evidences of indebtedness of specially chartered railway companies, is, in the opinion of the court, an arbitrary singling out of the Detroit, Grand Haven & Milwaukee Railway Company's stockholders, bondholders, and other creditors. No real and substantial distinction upon which to base a classification for the purpose of taxation exists between the stockholders, bondholders, and other creditors of that company and the stockholders, bondholders, and other creditors of other Michigan railway companies. The court is therefore of the opinion that Act No. 95, in thus singling out the stockholders, bondholders, and other creditors of the Detroit, Grand Haven & Milwaukee Railway Company for the purpose of the tax thereby imposed, does constitute class legislation in contravention of the fourteenth amendment, and that said act and the taxes assessed thereunder are thereby rendered void and of no effect. See Northern Pacific R. Co. v. Walker (C. C.) 47 Fed. 681; Railway v. Taylor (C. C.) 86 Fed. 168; Railroad Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892; Railway v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666; Cotting v. Stockyards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; Railway Co. v.

Greene, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247.

[5] The court is of the opinion, that Act No. 95 does not impair the obligation of the contract, viz., section 9, Act 140, Session Laws of 1855, between the state of Michigan and the Railway Company. The tax imposed by the act is not upon the Railway Company itself, but upon its stockholders, bondholders, and other creditors.

[6] The court is of the opinion also that the taxes involved in these suits are clearly illegal and void for the reason that the bonds and other evidences of indebtedness upon which they are assessed are all owned and held outside of the state of Michigan. No principle of the law of taxation is better settled than that a state cannot tax personal property owned and held outside of its territorial jurisdiction. The bonds and other evidences of indebtedness involved in this case are all owned and held by nonresidents of Michigan, and therefore, under the well-settled rule that personal property of that kind follows the domicile of its owner for the purposes of taxation, it follows that these bonds and other evidences of indebtedness are outside of the taxing jurisdiction of the state of Michigan. The question of the right of a state to tax securities owned and held outside of its territorial jurisdiction has been before the Supreme Court a large number of times. See State Tax on Foreign-Held Bonds, 15 Wall. 300, 21 L. Ed. 179; Murray v. Charleston, 96 U. S. 432, 24 L. Ed. 760; Railroad v. Pennsylvania, 153 U. S. 628, 14 Sup. Ct. 952, 38 L. Ed. 846; Savings Society v. Multnomah, 169 U. S. 421, 18 Sup. Ct. 392, 42 L. Ed. 803; New Orleans v. Stempel, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174; Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439; Assessors v. Comptor National, 191 U. S. 388, 24 Sup. Ct. 109, 48 L. Ed. 232; Life Insurance Co. v. New Orleans, 205 U. S. 395, 27 Sup. Ct. 499, 51 L. Ed. 853; Buck v. Beach, 206 U. S. 392, 27 Sup. Ct. 712, 51 L. Ed. 1106, 11 Ann. Cas. 732; Orleans Parish v. Insurance Co., 216 U. S. 517, 30 Sup. Ct. 385, 54 L. Ed. 597; Insurance Co. v. Assessors, 221 U. S. 346, 31 Sup. Ct. 550, 55 L. Ed. 762.

Under the principle established in the cases cited the court is clearly of the opinion that the taxes in question are void. The bonds and other evidences of indebtedness upon which these taxes are assessed have no situs in Michigan for the purposes of taxation.

[7] The court is also of the opinion that the imposition of these taxes under Act No. 95 impairs the obligation of the contract between the Railway Company and its bondholders and other creditors. It has contracted to pay these bondholders and creditors not only the principal of the amount of its indebtedness to them, but also certain stipulated interest, and to require it to deduct from the principal or interest payable to them the amount of such taxes is to interfere between it and its bondholders and other creditors. It matters not that this interference is in the form of taxation. As said in many cases, "the power to tax is the power to destroy," and if the state of Michigan has the power to levy this tax at all, it has the power to destroy, that is, appropriate to itself, entirely, the amounts

of the indebtedness owing by the Detroit, Grand Haven & Milwaukee Railway Company, because if it can levy a tax at the rate of 1 per cent. on the amount of such indebtedness, it can levy a tax at the rate of 10 per cent., 50 per cent.—there is no limit. It follows, as before stated, that this attempted tax is an illegal interference between the company and its bondholders and other creditors.

It follows that the demurrers must be overruled. The defendants will be given 30 days within which to answer the bills.