ALICE B. REYNOLDS *vs.* THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY.

Suffolk. May 14, 1937. — September 16, 1937.

Present: RUGG, C.J., CROSBY, DONAHUE, LUMMUS, & QUA, JJ.

*Insurance*, Life: policy loan, conversion into extended term insurance. *Interest. Words*, "Payable annually."

Under a clause in a policy of life insurance providing that upon non-payment of a premium the cash surrender value of the policy "less any indebtedness to" the insurer should be applied to convert the policy into extended term insurance, indebtedness of the insured on a policy loan by the insurer stipulating "interest payable annually" included interest computed from day to day to the time of the conversion.

CONTRACT. Writ in the Municipal Court of the City of Boston dated January 12, 1935.

The action was heard by *Zottoli*, J., who found for the defendant. A report to the Appellate Division was ordered dismissed. The plaintiff appealed.

*O. Titiev*, for the plaintiff.

*J. W. Black, Jr.*, for the defendant.

LUMMUS, J. This is an appeal by the plaintiff, the named beneficiary of a policy of insurance upon the life of Deane S. Reynolds, in an action upon the policy, from an order of the Appellate Division which sustained a decision for the defendant upon agreed facts.

The policy was for $5,000, issued March 5, 1919, and

required payment of quarterly premiums of $48.70. The policy contained the following provisions: "3. The reserve on this policy . . . shall be in accordance with the American Experience Table of Mortality with interest at three per cent. . . . 11a. The cash surrender value of this policy at any time prior to default in premium payment or within the grace period, shall be the then reserve on the policy . . . less any indebtedness to the company on account hereof . . . . 11f. Upon receipt of this policy and a full and valid surrender of all claims hereunder, without the consent or participation of any beneficiary not irrevocably designated, the company will pay its then cash surrender value. . . . 11g. At any time while this policy is in force except as extended term insurance, and without the consent or participation of any beneficiary not irrevocably designated, the company will on receipt of this policy properly assigned advance on the sole security hereof any amount up to the limit secured by its cash surrender value. The sum advanced shall bear interest at a rate not to exceed six per cent. per annum and may be repaid at any time while this policy is in force except as extended term insurance. Failure to pay either the sum advanced or interest thereon shall not avoid this policy unless the total indebtedness to the company on account hereof shall equal or exceed the then cash surrender value, nor until thirty-one days after notice shall have been mailed to the last known address of the insured and of any assignee."

In *Board of Assessors* v. *New York Life Ins. Co.* 216 U. S. 517, 521–522, in deciding that advances made upon policies did not constitute taxable "credits" of the insurance company, the court explained such advances by saying that when premiums have been paid for a certain time, the company "becomes bound ultimately to pay what is called their reserve value, whether the payment of premiums is kept up or not, and this reserve value increases as the payments of premiums go on. A policy-holder desiring to keep his policy on foot and yet to profit by the reserve value that it has acquired, may be allowed . . . to receive a sum not exceeding that present value, on the terms that on the

settlement of any claim under the policy the sum so received shall be deducted with interest, (the interest representing what it is estimated that the sum would have earned if retained by the . . . [company]); and that on failure to pay any premium or the above-mentioned interest the sum received shall be deducted from the reserve value at once. . . . As the . . . [company] never advances more than it already is absolutely bound for under the policy, it has no interest in creating a personal liability, and therefore the contract on the face of the [so called] note goes on to provide that if the note is not paid when due it shall be extinguished automatically by the counter credit for what we have called the reserve value of the policy. . . . In form it [the advance] subsists as an item until the settlement, because interest must be charged on it. In substance it is extinct from the beginning, because . . . it is a payment, not a loan." See also *Williams* v. *Union Central Life Ins. Co.* 291 U. S. 170, 179.

In the present case the insured availed himself of paragraph 11g of the policy by obtaining an advance of $1,575 on September 29, 1933. The last quarterly premium paid was that of September 5, 1933. The premium of $48.70 payable December 5, 1933, was never paid. The period of thirty-one days of grace expired on January 6, 1934. The reserve under the policy was $1,607.55. Deducting the advance of $1,575 left too little to pay the premium due December 5, 1933. In that situation the applicable provision was the following: "11c. Upon default in payment of premium, unless paid within the grace period, the amount of this policy . . . less any indebtedness to the company on account hereof, shall be extended automatically as nonparticipating term insurance for such time from the date of default as the then cash surrender value will provide at the net single premium rate for the attained age of the insured according to the American Experience Table of Mortality with interest at three per cent."

If we deduct from the reserve of $1,607.55 only the principal of the advance, $1,575, the balance of $32.55 would

have been sufficient to provide extended term insurance in the sum of $3,425 ($5,000 less $1,575) to a date subsequent to the death of the insured on February 10, 1934. If that is the proper computation, the plaintiff can recover the amount of the extended term insurance. But if from the reserve the defendant was entitled to deduct, in addition to the principal advance of $1,575, interest upon that advance from September 29, 1933, to December 5, 1933, amounting to $16.95, then the balance of $15.60 would have been sufficient only to provide such extended term insurance to February 9, 1934. If that is the proper computation, the insured died on February 10, 1934, without insurance, and the plaintiff cannot recover. The whole issue, therefore, relates to the propriety of deducting interest on the advance of $1,575.

The only difficulty is caused by the language of the instrument signed by the insured when he obtained the advance of $1,575. He assigned the policy to the defendant "as security for the repayment of said advance with interest" at the rate of six per cent per annum, "payable annually." The instrument provides that "If the policy shall become extended term insurance the then existing indebtedness shall be adjusted as provided in the policy, or according to the company's practice if the policy contains no provision relating thereto."

The plaintiff contends that no interest on the advance could become due or payable until September 29, 1934; and that in the computation of the extended term insurance in December, 1933, or January, 1934, no interest could be considered, because none was then due.

The construction contended for by the plaintiff, in the event that the policy should be changed into extended term insurance under paragraph 11c, would leave the company dependent upon an unsecured personal obligation of the insured for the interest. There was no purpose to create any personal obligation at all. Paragraph 11g of the policy shows that both principal and interest form part of the "total indebtedness" of the insured to the company, which

is not permitted to become larger than the cash surrender value without avoiding the policy. That paragraph provides that the advances "shall bear interest at a rate not to exceed six per cent. per annum," and does not suggest that the interest is not to accrue day by day. The actuarial computations by which the cash surrender value (paragraph 11a) is determined by deducting from the reserve "any indebtedness to the company," would become illogical and unscientific if interest on advances should not be figured day by day. In the absence of a plain provision governing the computation of interest (*Swift* v. *Columbian National Life Ins. Co.* 262 Mass. 399; *Willingham* v. *Equitable Life Assurance Society*, 86 Fed. [2d] 72), that consideration is entitled to weight. The provision of paragraph 11g of the policy that an advance on the security of the policy "may be repaid at any time while this policy is in force except as extended term insurance" implies that advances are to be fully adjusted before the date of expiration of the term insurance is determined. The provision of the instrument signed by the insured when he obtained the advance, that interest was to be "payable annually," appears to mean, not due, but capable of being repaid, annually, in case the insured chooses to repay the advance with interest, and thus restore the policy to its original condition. We are of opinion that that provision has no application to the adjustment of accounts incident to the conversion of the original insurance into extended term insurance.

The plaintiff's requests for rulings which were denied present nothing requiring further discussion.

*Order dismissing report affirmed.*